UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY <br> 518 E. Broad St. <br> Columbus, Ohio 43215-23901 <br><br> Plaintiff, <br><br> v. <br><br> DAUBERT, SHANNON & ASSOCIATES, LLC <br> Serve: <br> URS Agents, LLC <br> 7288 Hanover Green Drive <br> Mechanicsville, Virginia 23111-0000 <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. |

## **COMPLAINT**

Plaintiff, State Automobile Mutual Insurance Company ("Plaintiff" or "State Auto"), by counsel, files this Complaint against the defendant, Daubert, Shannon & Associates, LLC ("DSA" or "Defendant") and states as follows:

## **PARTIES**

1. Plaintiff State Auto is an insurance company organized and existing under the laws of the state of Ohio, with its principal place of business located in Columbus, Ohio. State Auto, therefore, is a citizen of the state of Ohio. State Auto is not a citizen of the Commonwealth of Virginia, but submits itself to the jurisdiction of this Court.

2. Defendant DSA is a limited liability company organized and existing under the laws of the State of Pennsylvania with its principal place of business located in Bethlehem,

{02535769.DOCX } 1

Pennsylvania. DSA is a limited liability company authorized to transact business in Virginia. The managing member of DSA is Ryan Daubert. On information and belief, DSA is a citizen of the Commonwealth of Pennsylvania, and not a citizen of the state of Ohio

3. All necessary and indispensable parties to this adjudication have been properly joined herein.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. The venue of this action is properly predicated on 28 U.S.C. § 1391, 28 U.S.C. §127, and Rule 3 of the Local Rules of the United States District Court for the Eastern District of Virginia, in that jurisdiction is founded on diversity of citizenship and this action is brought in the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred and in which the property that is the subject of this action is situated.

## THE AGENCY AGREEMENT

6. On August 9, 2018, State Auto entered in a Limited Term Agency Agreement with DSA that was effective from August 9, 2018 to August 9, 2021 ("Agency Agreement"). A true and accurate copy of the Agency Agreement is attached to this Complaint as **Exhibit 1** and is incorporated by reference as if fully restated herein.

7. Under the Agency Agreement, DSA was authorized to solicit, write, and bind State Auto to property casualty insurance in the Commonwealth of Virginia.

8. DSA's authority to act on behalf of State Auto was limited by and subject to the terms, conditions, and provisions of the Agency Agreement and State Auto's underwriting rules and guidelines.

9. Specifically, under the Agency Agreement, the appointment of DSA to act on behalf of State Auto was "subject to all applicable laws and regulations of the state or states in which [DSA] is authorized to sell insurance, and further subject to the terms and conditions set forth herein."

10. DSA, under the Agency Agreement, was obligated to:

    a. "Provide all usual and customary services of an insurance agent on all insurance contracts placed by the Agent with the Company;"

    b. "Adhere to all the published instructions, restrictions, rules and regulations of State Auto and any special instructions that may be issued by State Auto;"

    c. "Fulfill the obligations of the an insurance agent as commonly agreed upon within the insurance industry, including, but not limited to, providing proper service to policy holders;" and

    d. "Notwithstanding the foregoing in this Section F, if the Company is held legally liable for damages arising out of the gross negligence of the Agent or a person for whom the Agent is legally responsible, the Company shall be entitled to obtain indemnification from the Agent for such damages and expenses incurred by the Company."

11. The Agency Agreement was in effect at all relevant times hereto.

## THE APPLICATION AND INSURANCE CONTRACT

12. On September 17, 2020, Phil Capron ("Mr. Capron") reached out to Ryan Daubert ("Mr. Daubert"), the Managing-Member and Senior Partner at DSA, to procure an insurance policy for Colonial Landing Apartments, LLC.

13. Colonial Landing Apartments, LLC is an apartment complex located along Kecoughtan Road in Hampton, Virginia with 92 residential apartment units. ("Colonial Landing").

14. When Mr. Capron reached out to DSA, he was in the process of purchasing the Colonial Landing.

15. DSA agreed to assist Mr. Capron with the procurement of insurance for Colonial Landing.

16. Matthew Lauth ("Mr. Lauth"), DSA's Vice President of Sales, worked directly with Mr. Capron to procure insurance for Colonial Landing.

17. Pursuant to the Agency Agreement, Mr. Lauth reached out to State Auto to obtain a quote for insurance on behalf of Mr. Capron and Colonial Landing.

18. While procuring insurance for Colonial Landing from State Auto, DSA had an obligation to abide by the Agency Agreement.

19. Using documents provided by Mr. Capron, Mr. Lauth completed State Auto's Application for Insurance ("Application") on behalf of Colonial Landing. The Application is attached as **Exhibit 2** to this Complaint and is incorporated by reference as if fully restated herein.

20. The Application contains questions that State Auto uses in its underwriting process to determine whether an applicant's property is suitable for insurance and, if so, to determine the necessary premium.

21. The Application asks the question "Are any of the buildings Housing Authorities

or do they include subsidized housing?"

22. DSA completed the Application and answered that "No" Colonial Landing did not include subsidized housing.

23. In truth, the Property contained subsidized housing.

24. Had the Application contained true and correct information pertaining to subsidized housing at the Property, then State Auto would have put a "hard stop" on the Application and the Insurance Contract would not have been issued.

25. DSA submitted the Application to State Auto on behalf of Colonial Landing.

26. Unbeknownst to State Auto, the Application contained inaccurate information, which directly impacted State Auto's ability to assess and underwrite Colonial Landing.

27. Based on the representations in the Application, State Auto issued Businessowners Policy Number 10043954CB to Colonial Landing on October 22, 2020 for the policy period of October 23, 2020 to October 23, 2021 ("Insurance Contract"). A true and accurate copy of the Insurance Contract is attached as **Exhibit 3** to this Complaint and is incorporated by reference as if fully restated herein.

### THE UNDERLYING FIRE AND CLAIM

28. In the afternoon of December 21, 2020, a fire occurred at Colonial Landing ("Fire").

29. The cause of the Fire was determined to be an unattended cooking fire in the kitchen area of Colonial Landing Unit 63B.

30. Pursuant to the Insurance Contract, Mr. Capron submitted a claim for insurance coverage to State Auto for damage caused by the Fire to Colonial Landing.

31. State Auto assigned the matter Claim Number PR-0000000-336521 ("Claim") and began an investigation of the Claim and the Fire.

32. In the course of its investigation of the Claim and the Fire, State Auto discovered that the Colonial Landing did, in fact, contain subsidized housing units despite the contrary representations in the Application.

33. The tenants of Unit 63B, where the Fire originated, were placed at Colonial Landing by the Hampton-Newport News Community Service Board ("HNNCSB") via a subsidized housing program.

34. Colonial Landing Unit 63B was one of a number of units at Colonial Landing that were subsidized by the HNNCSB.

35. Each month, HNNCSB paid rent directly to Colonial Landing for all of the units that it subsidized at Colonial Landing.

36. In the course of its investigation, State Auto determined that it was necessary to take the recorded interview of Mr. Lauth and Mr. Capron.

37. On January 18, 2021, State Auto conducted a recorded interview of Mr. Lauth.

38. At his recorded interview, Mr. Lauth made the following statements and representations, among others:

   a. That he was the Vice President of Sales at DSA and had been in the industry for 17 years;

   b. That he discussed Colonial Landing's basic information with Mr. Capron before completing the underwriting questions and Application on his own;

   c. That he answered the Application's questions using his experience and assumptions about Colonial Landing;

    d.   That he assumed Colonial Landing had no Housing Authorities' buildings and did not include subsidized housing;

    e.   That he did not verify any of the questions on the Application with Mr. Capron before completing the Application; and

    f.   That he did not review or go through the Application with Mr. Capron after completing the Application.

39.    Mr. Lauth confirmed that DSA completed the Application without verifying or reviewing material information with Mr. Capron prior to submitting the Application to State Auto.

40.    Mr. Lauth also confirmed that he did not discuss or ask Mr. Capron about subsidized housing at Colonial Landing prior to submitting the Application to State Auto.

41.    State Auto conducted a recorded interview of Mr. Capron on February 24, 2021.

42.    At his recorded interview on February 24, 2021, Mr. Capron made the following statements and representations, among others:

    a.   That the previous owner of Colonial Landing provided Mr. Capron with "rent rolls" prior to Mr. Capron's purchase of Colonial Landing;

    b.   That the "rent rolls" referenced the HNNCSB as the "payer" of certain of Colonial Landing's units;

    c.   That, prior to purchasing Colonial Landing, he was aware that Colonial Landing contained subsidized housing units;

    d.   That, prior to purchasing Colonial Landing, he was aware of the tenants at Colonial Landing who were receiving rental assistance and/or subsidized housing from the HNNCSB;

    e.   That most of the calls to police from Colonial Landing came from tenants who

      were receiving some form of subsidized housing;

  f.  That he did not verify or review all of the questions on the Application with Mr. Lauth, or any other representative from DSA;

  g.  That he did not discuss with Mr. Lauth, or any other representative of DSA, whether Colonial Landing contained subsidized housing units;

  h.  That he did not answer the question on the Application of whether "any of the buildings [are] Housing Authorities or do they include subsidized housing;" and

  i.  That if he had been asked whether "any of the buildings [are] Housing Authorities or do they include subsidized housing," then he would have answered "yes."

43. Mr. Capron confirmed that he was aware that Colonial Landing contained subsidized housing at the time that the Application was completed and submitted to State Auto.

44. Mr. Capron confirmed that the Application was completed by DSA without first verifying material information with him.

45. State Auto issued payment under the Insurance Contract to Colonial Landing in the total amount of $1,103,150.98 as a result of the Claim.

## COUNT I – BREACH OF AGENCY AGREEMENT

46. State Auto incorporates the preceding allegations contained in Paragraphs 1-41 of the Complaint as if fully set forth herein.

47. State Auto issued the Insurance Contract based on the representations made by DSA in the Application.

48. DSA had a contractual duty to provide all of the usual and customary services of

an insurance agent.

49. DSA had a contractual duty to adhere to all of State Auto's published instructions, special instructions, restrictions, rules and regulations.

50. DSA had a contractual duty to fulfill the obligations of an insurance agent as commonly agreed upon within the insurance industry.

51. DSA was aware of its duties and obligation under the Agency Agreement.

52. DSA understood that the Application was essential to State Auto's underwriting evaluation and that State Auto would rely upon the information and representations in the Application in its decision to issue an insurance policy to Colonial Landing.

53. DSA failed to verify material information on the Application with Mr. Capron before submitting it to State Auto.

54. DSA's actions and omissions in the completion of the Agency Agreement constituted a breach of the Agency Agreement.

55. As a result of DSA's breach of the Agency Agreement, State Auto issued the Insurance Contract to Colonial Landing.

56. DSA would not have issued the Insurance Contract but for DSA's failure to verify the information in the Application with Mr. Capron.

57. State Auto has suffered actual damages and expenses due to DSA's breach of the Agency Agreement.

## COUNT II – GROSS NEGLIGENCE

58. State Auto incorporates the preceding allegations contained in Paragraphs 1-41 of the Complaint as if fully set forth herein.

59. DSA had a contractual duty to indemnify State Auto for any damages and expenses incurred by State Auto arising out of the gross negligence of DSA.

60. DSA was aware of its duties and obligation under the Agency Agreement.

61. DSA understood that the Application was essential to State Auto's underwriting evaluation and that State Auto would rely upon the information and representations in the Application in its decision to issue an insurance policy to Colonial Landing.

62. DSA's failure to discuss, let alone verify, material information on the Application with Mr. Capron before submitting it to State Auto constitutes grossly negligent behavior, breach of duty, and a complete and reckless disregard or indifference of State Auto's rights.

63. As a result of DSA's grossly negligent behavior, State Auto issued the Insurance Contract to Colonial Landing.

64. DSA would not have issued the Insurance Contract but for DSA's failure to discuss and verify the information in the Application with Mr. Capron.

65. State Auto has suffered actual damages and expenses due to DSA's gross negligence.

WHEREFORE, State Auto demands judgment against DSA in the amount of $1,103,150.98 plus pre-judgment and post-judgment interest thereon, as well as the costs and fees incurred in litigating this matter and such other and further relief as the Court deems just and proper.

STATE AUTOMOBILE MUTUAL INSURANCE COMPANY

By Counsel

<u>/s/ Robert Tayloe Ross</u>
Robert Tayloe Ross, Esq. (VSB# 29614)
Daniel J. Laws, Esq. (VSB# 93624)
MIDKIFF, MUNCIE & ROSS, P.C.
300 Arboretum Place, Suite 420
Richmond, Virginia 23236
Telephone: (804) 560-9600
Facsimile: (804) 560-5997
rross@midkifflaw.com
dlaws@midkifflaw.com
*Counsel for State Automobile Mutual Insurance Company*